IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

**JOSEPH PECAR,**

   **Plaintiff,**

vs.

**ST. PAUL FIRE AND MARINE
INSURANCE COMPANY,**

   **Defendant.**

Civil Action No. AW-01-CV-1941

## MEMORANDUM OPINION

This case involves a dispute over the existence of a professional liability insurance policy. Plaintiff, Joseph Pecar, alleges that Defendant, St. Paul Fire and Marine Insurance Co., issued a malpractice insurance policy to a doctor that negligently rendered Plaintiff sterile. Plaintiff received a default judgment for more than $1.2 million against the doctor, and now he seeks to collect under the doctor's alleged insurance policy. Defendant argues that Plaintiff has no evidence to demonstrate insurance coverage at the time of the alleged negligence, and refuses to pay. The doctor has since died, and neither party can find the alleged policy.

Plaintiff filed his Complaint in state court seeking relief for breach of contract and bad faith. Defendant removed based on diversity. Time for discovery has expired. Pending before the Court is Defendant's Motion for Summary Judgment as to Count I (breach of contract), and Defendant's Motion to Dismiss Count II (bad faith). The parties have fully briefed the Motions. On July 1, 2002, the Court held a hearing on the Motions. Finding that Plaintiff has failed to produce evidence that Defendant insured Dr. Passarelli on May 27, 1966, and, consequently, that Plaintiff's cannot prove a claim for bad faith in Maryland, the Court grants summary judgment on both Counts.

**I.    BACKGROUND**

On May 27, 1966, when Plaintiff was approximately six (6) months old, Dr. Passarelli performed surgery on him to repair a bilateral hernia and bilateral hydrocel. Dr. Passarelli died in 1969. After Plaintiff reached the age of majority, he discovered that he was sterile. Plaintiff sued the Estate of Dr. Passarelli. In the suit, Plaintiff alleged that Dr. Passarelli negligently performed the May 27, 1966 surgery and caused Plaintiff's sterility. Plaintiff initially requested that Defendant defend the Estate. Without evidence of a policy for Dr. Passarelli, however, Defendant refused. Plaintiff secured a default judgment against the Estate, in the amount of $1,265,308.

Plaintiff then brought this action against Defendant, seeking to collect the amount of the judgment. Plaintiff raises two Counts. First, in Count I, Plaintiff seeks a judgment for $1,265,308, based upon his allegation that Defendant insured Dr. Passarelli at the time of his injury. Second, in Count II, Plaintiff seeks compensation for Defendant's alleged bad faith in not defending Dr. Passarelli's Estate in the negligence suit, and failing to pay when the court entered the judgment.

Neither Plaintiff, nor Defendant, nor the Personal Representative for Dr. Passarelli's Estate have found a professional liability policy in effect for Dr. Passarelli on May 27, 1966. However, Plaintiff offers two documents that he argues show that Defendant insured Dr. Passarelli on May 27, 1966, and that the policy covered the type of professional negligence that formed the basis of the judgment against Dr. Passarelli.

First, Plaintiff offers a 1962 Certificate of Insurance (the "Certificate") issued by Defendant to Holy Cross Hospital -- a hospital that Dr. Passarelli allegedly worked -- that purports to provide insurance coverage for Dr. Passarelli. Plaintiff offers testimonial evidence that a representative of Defendant filed the Certificate. The Certificate contains no policy number and says that the policy would expire on May 1, 1963.

Second, Plaintiff offers a "Statement of Transactions" ("the Statement") that the original

2

representative of the Estate, Riggs Bank ("Riggs"), allegedly filed in the Orphans Court for Prince George's County to show professional insurance coverage from 1969-1970. The Statement provides:

> J. Blaise Desibour & Co.
> St. Paul Policy 566X85903 $1,000,000
> Top Brass Personal Catastrophe Liab

The parties do not know who prepared this document. Nor do the parties know the source of the information contained in the document. However, Plaintiff offers evidence that, according to representatives of Defendant, the Top Brass policy number "5" at the beginning of the policy means it was a liability policy, the numbers "66" that followed means that Defendant issued the policy from its headquarters, the letters "X8" show it was an excess policy, and the last four digits corresponded to Top Brass policies sold during the period in question. To prove coverage on May 27, 1966, Plaintiff offers evidence that the company that issued the 1962-1963 Certificate was succeeded in business by J. Blaise Desbibour, the company that issued the 1969-1970 Statement.

Viewing the facts in the light most favorable to the Plaintiff, the Court finds the evidence insufficient, as a matter of law, to establish the existence and terms of a professional liability insurance policy issued by Defendant that covers Dr. Passarelli's conduct on May 27, 1966.

**II.   DISCUSSION**

*A.   Motion for Summary Judgment as to Count I*

In reviewing a motion for summary judgment, the court must "draw all justifiable inferences in favor of the nonmoving party, including questions of credibility and of the weight to be accorded to particular evidence." *Masson v. New Yorker Magazine*, 501 U.S. 496, 520, 111 S.Ct. 2419 (1991) (citations omitted). Rule 56(c) of the Federal Rules of Civil Procedure provides that the entry of

summary judgment is proper, "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Cray Communications, Inc. v. Novatel Computer Systems, Inc.*, 33 F.3d 390, 393 (4th Cir.1994); *see LeBlanc v. Cahill*, 153 F.3d 134 (4th Cir. 1998). Summary judgment may be appropriate if the moving party can show that little or no evidence may be found in support of the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Summary judgment may also be appropriate if no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight that no genuine issue of material fact exists. *Id.*

The absence of any admissible evidence is sufficient to shift the burden of production to the Plaintiff. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548 (1986). Once the burden has shifted, the evidentiary standard under Rule 56 rises to require the nonmoving party to "set forth specific facts showing there is a genuine issue for trial" by affidavit, depositions, answers to interrogatories, admissions, or other evidence that would be admissible at trial. FED. R. CIV. P. 56(c) (56)(e). This burden is "particularly strong" where the nonmoving party also bears the burden of proof at trial. *Hughes v. Bedsole*, 48 F.3d 1376, 1381 (4th Cir. 1995) (quoting *Pachaly v. City of Lynchburg*, 897 F.2d 723, 725 (4th Cir. 1990)). Moreover, the Court may only enter summary judgment after "adequate time for discovery." *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552; *Temkin v. Frederick County Com'rs*, 945 F.2d 716, 719 (4th Cir. 1991).

The time for discovery has expired, yet Plaintiff has failed to produce evidence of the existence and terms of a professional liability insurance policy issued by Defendant that covers Dr. Passerlli's conduct on May 27, 1966. The original representative of the Estate, Riggs, has no records relating to Dr. Passarelli's insurance coverage. Plaintiff has no witness that can testify as to having

4

ever seen an insurance policy that covered Dr. Passarelli on May 27, 1966. Nor will Plaintiff produce any witness at trial with personal knowledge of the terms and conditions of any such policy. Moreover, Plaintiff does not have any business or personal records of Dr. Passarelli indicating whether Dr. Passarelli had professional liability insurance on May 27, 1996. Plaintiff also offers no evidence suggesting that Defendant defended or paid claims for Dr. Passarelli pursuant to a professional liability policy that may have existed in 1966, and no evidence of payment or premiums paid by Dr. Passarelli to an insurance agent, or Defendant directly, for a professional liability policy in effect in 1966. Plaintiff offers no testimonial evidence from Dr. Passarelli's insurance agent regarding his professional liability coverage in 1966, and no evidence as to why copies of any medical professional liability policy, if one existed, were lost, discarded or destroyed. Under these facts, the Court must grant summary judgment.

To be sure, Plaintiff must rely on questionable secondary evidence to establish the existence and contents of Defendant's policy. To introduce such evidence, Plaintiff must make a threshold showing of (1) the loss or destruction of the original policy and (2) the absence of bad faith. *See* FED.R.EVID. 1004. The Court does not make any judgment regarding the weight of the evidence because it assumes, without deciding, that the Certificate of Insurance is proof Defendant insured Dr. Passarelli from 1962 to 1963, and the that the Statement is proof of coverage from 1969 to 1970.[1] Nonetheless, the Court finds evidence of coverage by Defendant for these periods utterly insufficient to prove coverage on May 27, 1966. Going to trial with this lack of evidence would be asking the finder-of-fact to assume, presume or speculate about the ultimate fact of coverage, and then to guess about the terms of coverage.

---

[1] Indeed, the Statement of proof is for excess policy coverage and does not provide evidence of primary policy coverage.

5

Plaintiff argues that the spoliation of evidence rule requires a different result.  Plaintiff reasons that, because Defendant has a common practice of destroying its records that are older than ten years, and because the policy at issue here was an occurrence policy, which by its terms may be the subject of litigation well after ten years, the Court must find that the policy existed on May 27, 1966.  The Court disagrees.  The Fourth Circuit in *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148 (4th Cir. 1995) explained the spoliation of evidence rule and its limitations.

> [W]hen a proponent's intentional conduct contributes to the loss or destruction of evidence, the trial court has discretion to pursue a wide range of responses both for the purpose of leveling the evidentiary playing field and for the purpose of sanctioning the improper conduct.  *See Welsh v. United States*, 844 F.2d 1239, 1246 (6th Cir.1988); *Nation-Wide Check Corp. v. Forest Hills Dist., Inc.*, 692 F.2d 214, 218 (1st Cir.1982).  Even if a court determines not to exclude secondary evidence, it may still permit the jury to draw unfavorable inferences against the party responsible for the loss or destruction of the original evidence. An adverse inference about a party's consciousness of the weakness of his case, however, cannot be drawn merely from his negligent loss or destruction of evidence; the inference requires a showing that the party knew the evidence was relevant to some issue at trial and that his willful conduct resulted in its loss or destruction. *See id.* at 217-18.

*Id.* at 156.  Here Plaintiff has produced no evidence, nor does the court find any evidence, that supports an inference that Defendant knowingly, intentionally or willfully destroyed the policy, if such a policy exited.  Thus, the Court finds the spoliation of evidence rule inapplicable.

Finally, finding that evidence is lacking to support a finding of a professional liability policy issued by Defendant for the applicable period, the Court must also grant summary judgment on the issue of bad faith for failure to defend or pay pursuant to the alleged policy. *Berkshire Life Ins. Co. v. Maryland Ins. Admin.*,142 Md. App 628, 672, 791 A.2d 942, 967 (Md. App. 2002) (holding that a claimant must prove by a preponderance of the evidence that an insurer acted arbitrarily and capriciously in refusing to pay claim.)

### III. CONCLUSION

For the reasons stated above, the Court will GRANT Defendant's Motion for Summary Judgment as to Counts I and II of Plaintiff's Complaint. An Order consistent with this Opinion will follow.

July 10th, 2002
Date

Alexander Williams, Jr.
United States District Judge